IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DERYL L. BAKER and SHERI L. BAKER,<br>a/k/a SHERI JONES,<br>    Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A., et al.,<br>    Defendants. | Case No. 3:12-cv-01222<br>Judge Trauger / Knowles |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon three Motions to Dismiss: the first, filed by Defendants Shellie Wallace and Wilson & Associates, PLLC (collectively "W&A"); the second, filed by Defendants JP Morgan Chase Bank, National Association, individually and as successor by merger to Chase Manhattan Mortgage Corp., and as successor by merger Chase Home Finance, LLC, Mortgage Electronic Registration Systems, Inc., and MERSCORP (collectively "Chase/MERS"); and the third, filed by Defendant Primary Residential Mortgage, Inc. ("PRM"). Docket Nos. 52, 54, 58. Each Motion is supported by an accompanying Memorandum of Law. Docket Nos. 53, 55, 59.

Plaintiff has not filed a Response to any of the instant Motions.

Plaintiff, pro se, summarizes this action as follows:

> 1. On behalf of themselves, "Plaintiffs,"[1] bring this action against Defendants for damages that she suffered by reason of fraud, attempts of the defendants, their associates, and co-conspirators, to

---

[1] This action was originally brought by Plaintiff and her husband, Deryl L. Baker. Mr. Baker has subsequently been terminated as a party to this action. Accordingly, Mrs. Sheri L. Baker, a/k/a Sheri Jones, is the only remaining Plaintiff.

> attempt to wrongfully eject plaintiff's [*sic*] from their homestead, based on a non-performing, breached Note, and Deed of Trust. The activities of the defendants were and are, unlawful racketeering activity and/or conspiracy that give rise to relief by virtue of causing harm to plaintiffs by actions committed in their quest to deprive plaintiffs of their right to own property.

Docket No. 45, Clarified Complaint, p. 1 (footnote added).

Defendants W & A filed their Motion to Dismiss and supporting Memorandum arguing that Plaintiff's Clarified Complaint has failed to allege sufficient facts to support a claim upon which relief can be granted with regard to her claims that W & A violated the Fair Debt Collection Practices Act ("FDCPA"); 42 U.S.C. §§ 1982 and 1983; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Docket Nos. 52, 53.

Defendants Chase/MERS filed their Motion to Dismiss and supporting Memorandum arguing that Plaintiff's claims against them should be dismissed because: (1) Plaintiff's claim of usury fails as a matter of law because the interest rate specified in her Note is not usurious; (2) Plaintiff's claim for "claims in recoupment" fails because "it is a disguised claim for 'splitting' of the Note and Deed of Trust, which fails as a matter of law"; (3) Plaintiff's FDCPA claim fails because the Chase/MERS Defendants do not fall under the definition of "debt collectors" and because Plaintiff's claims arising in 2010 and 2011 are barred by the statute of limitations; (4) Plaintiff's §§ 1982 and 1983 claims fail because the Chase/MERS Defendants are not state or local government actors or officials; (5) Plaintiff's claims for declaratory relief under RICO fail because Plaintiff has failed to state facts necessary to support such a claim; and (6) Plaintiff's request for enforcement of a Consent Order, which Plaintiff characterizes as an

OCC Consent Order, is not actionable, as Plaintiff lacks standing to enforce that Order.[2] Docket Nos. 54, 55.

Defendant PRM filed its Motion to Dismiss and supporting Memorandum arguing that Plaintiff's claims against it should be dismissed because: (1) Plaintiff's breach of contract claim fails because she cannot demonstrate any actual breach of the contract; (2) Plaintiff's §§ 1982 and 1983 claims fail because PRM is not a state or local government actor or official and because Plaintiff fails to allege an actionable discriminatory basis for her claims; and (3) Plaintiff's claims for declaratory relief and damages under RICO fail because Plaintiff has made no specific allegations against PRM.

As noted above, Plaintiff has not responded to any of the instant Motions.

For the reasons to be discussed below, the undersigned recommends that Defendants' Motions to Dismiss (Docket Nos. 52, 54, 58) be GRANTED, and that this action be DISMISSED.

## II. Facts[3]

On October 24, 2008, Plaintiff entered into a Note secured by a Deed of Trust on property located at 165 Timber Ridge Drive, Nashville, Tennessee, 37217 ("Property"), in the original principal amount of $208,354.00, originated by Defendant Primary Residential Mortgage, Inc. Docket No. 45, Clarified Complaint, ¶ 20; Ex. A. The Note was subject to a 6% rate of interest and was made for purposes of refinancing a previous loan that Plaintiff held on

---

[2] Plaintiff apparently is referring to a Consent Order involving the Office of the Comptroller of the Currency. *See* Docket No. 55-1.

[3] Unless otherwise noted, the following facts are taken from Plaintiff's Clarified Complaint (Docket No. 45) and its accompanying Exhibits.

the property. *Id.*, ¶¶ 20-21. Accordingly, part of the proceeds from the Note paid in full a prior deed of trust that Plaintiff had executed and that encumbered the Property. *Id.*, Exs. C, D. On December 10, 2008, a Deed of Release, releasing the previous deed of trust as a result of the payoff through refinancing, was filed in the Davidson County Register of Deeds Office. *Id.*, Ex. D.

With regard to Defendant PRM, Plaintiff alleges that PRM breached the Note by failing to fund the $208,354.00 loan. *Id.*, ¶ 131. The $208,354.00 in refinance loan funds were used to pay off Plaintiff's previous loans with Select Portfolio Servicing ($157,218.51) and First Franklin Loan Services ($39, 697.03). *Id.*, ¶¶ 41, 42; Ex. C.

Plaintiff contends that after she entered into the Note and Deed of Trust, the Note was "unlawfully" assigned to Chase. *Id.*, ¶ 29. Plaintiff argues that this assignment to Chase constituted theft. *Id.*, ¶ 30. Plaintiff concedes, however, that the Note bears an endorsement to Chase. *Id.*, ¶ 32. Plaintiff avers that Chase, MERS, and others engaged in a "payoff scheme," whereby Plaintiff was stripped of her interest in the Note. *Id.*, ¶¶ 40-53.

On November 14, 2008, MERS executed, and on November 17, 2008, Security Connections, Inc., recorded in the Davidson County Register of Deeds office, a Release of Deed, Instrument No. 20081117-0112856, releasing Plaintiff's Deed of Trust given by her to First Franklin to secure a loan in the amount of $39,600.00, Instrument No. 20061004-0122978. Docket No. 58-3.

On December 1, 2008, MERS executed, and on December 10, 2008, Select Portfolio Servicing, recorded in the Davidson County Register of Deeds office, a Release of Deed, Instrument No. 20081210-0119210, releasing Plaintiff's Deed of Trust given by her to First

Franklin to secure a loan in the amount of $158,400.00, Instrument No. 20061004-0122977. Docket No. 58-4.

Plaintiff alleges that, also on December 1, 2008, Chase fraudulently conveyed all rights, title, and interest in Plaintiff's Note to Ginnie May (Docket No. 45, ¶ 69), which she alleges was part of an "improper" and "undisclosed" securitization scheme orchestrated by Chase (*Id.*, ¶¶ 61-83). Plaintiff argues that, as a result of this "improper" securitization scheme, she was obligated to pay back a "phantom" loan. *Id.*, ¶ 83.

Section 18 of the Deed of Trust provides that if the Lender invokes the power of sale, following default, the Trustee shall give notice of the sale in the manner provided for by applicable law. *Id.*, Ex. A. The Trustee, without demand on the Borrower, may sell the property at public auction. *Id.*

Section 20 of the Deed of Trust provides that the Lender, at its option, may from time to time remove the Trustee and appoint a successor trustee, the successor trustee succeeding to all the title, power, and duties conferred on the original Trustee. *Id.*

On or about August 24, 2010, Plaintiff received a Notice of Trustee's Sale ("NOTS") via the U.S. Mail stating that she had defaulted on her loan obligations. *Id.*, ¶ 100. The NOTS contained information about the debt owed by Plaintiff. *Id.*

On September 13, 2010, an Appointment of Successor Trustee ("AOST") naming Shellie Wallace as Successor Trustee and Deanna Dorrough as Co-Trustee, was recorded with the Davidson County Register of Deeds. *Id.*, Ex. G. The AOST vested the Successor Trustee with all rights, powers, duties, privileges, and immunities of the original Trustee named in the Deed of Trust. *Id.* The AOST further ratified and approved all actions taken by the Successor Trustee.

*Id.*

As Successor Trustee, W & A scheduled a foreclosure sale of the Property to be held on October 6, 2011. *Id.*, ¶ 14. That foreclosure sale was postponed. *Id.*, ¶ 15. W & A scheduled a subsequent foreclosure sale of the Property to be held on January 18, 2012. *Id.*, ¶ 16. That foreclosure sale likewise did not occur, and, at the time of the filing of the instant action, no foreclosure sale had been conducted. *Id.*, ¶ 18. Plaintiff continued to reside in the Property as of the time of the filing of this action. *Id.*, ¶¶ 3, 4.

### III. Analysis

**A. Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim
upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate

standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

**B. The Case at Bar**

Plaintiff alleges that Defendants violated her rights under the Fair Debt Collections Practices Act; 42 U.S.C. §§ 1982 and 1983; the 14th Amendment; and the Racketeer Influenced and Corrupt Organizations Act. Docket No. 45. Plaintiff also raises claims of Usury, Breach of Contract, Fraud, and Conspiracy, and she seeks the enforcement of a Consent Order.[4] *Id.*

**1. Fair Debt Collections Practices Act ("FDCPA")**

The FDCPA applies to debt collectors, and provides that, upon being assigned a debt, the

---

[4] Plaintiff additionally raises a few miscellaneous arguments that are not actual claims. Plaintiff's miscellaneous arguments will nevertheless be addressed herein.

7

debt collector must communicate with a consumer in connection with the collection of the debt and send the consumer a written notice containing information about the debt. *See, e.g.,* 15 U.S.C. §§ 1692a(6), 1962g.

As an initial matter, the Chase/MERS Defendants and Defendant PRM are not "debt collectors" as defined by the FDCPA. The FDCPA defines "debt collectors" as including "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA and established case law except mortgage holders and loan servicers from the Act's definition of "debt collector." *See* 15 U.S.C. 1692a(6)(F) ("A debt collector does not include 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.'"); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996). Additionally, the law is well-settled that attempts to foreclose on a mortgage do not constitute debt collection activity for the purposes of the FDCPA. *See, e.g., Montgomery v. Huntington Bank*, 346 F.3d 693, 700-01 (6th Cir. 2003). Because the Chase/MERS Defendants and Defendant PRM are not "debt collectors" as defined by the FDCPA, and because foreclosure actions do not constitute debt collection activity for FDCPA purposes, Plaintiff cannot sustain this claim against them.

With regard to her allegations that Defendants W & A violated her rights under the FDCPA, Plaintiff acknowledges that, on or about August 24, 2010, she received a Notice of

Trustee's Sale ("NOTS") via the U.S. Mail stating that she had defaulted on her loan obligations. *Id.*, ¶ 100. The NOTS contained information about the debt owed by Plaintiff. *Id.* Because the NOTS contained information about the debt owed by Plaintiff, it fulfilled the requirements of the FDCPA, and Plaintiff cannot prevail on her FDCPA claim against Defendants W & A. *See* 15 U.S.C. § 1692g.

Moreover, Tennessee statutes provide that a successor trustee does not have an independent duty to conduct any kind of investigation into the underlying merits of a lender's request to conduct a foreclosure sale. *See* Tenn. Code. Ann. § 35-5-116 (a trustee shall not be liable for any good faith error resulting from reliance on any information in law or fact provided by the borrower or the secured party). Accordingly, Defendants W & A had no duty to determine who owned the Note, whether Plaintiff was in default, whether there were pre-foreclosure settlement discussions, or whether additional fees were added to the Note. Defendants W & A, therefore, were properly acting with the authority and duties described in the Deed of Trust.

Finally, claims made under the FDCPA are subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d). This action was filed in State Court on October 19, 2012. Accordingly, any violations Plaintiff avers occurred prior to October 19, 2011 are time-barred.

### 2. 42 U.S.C. §§ 1982 and 1983

Section § 1982 relates to intentional race discrimination in the inheritance, purchase, lease, sale, holding, or conveyance of real and personal property. *See* 42 U.S.C. § 1982; *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987). Plaintiff's Clarified Complaint contains no allegations of racial animus. Accordingly, Plaintiff cannot sustain her § 1982 claims.

9

In order for Plaintiff to sustain her claim under § 1983, Defendants must be state actors or acting under color of state law. *See* 42. U.S.C. § 1983; *Wyatt v. Cole*, 504 U.S. 158 (1992); *West v. Atkins*, 487 U.S. 42 (1988). None of the Defendants in this action are state actors, nor did they act under color of state law. Accordingly, Plaintiff cannot sustain her § 1983 claims.

### 3. 14th Amendment Due Process

The 14th Amendment concerns State actions. *See* U.S. Const. Amend. XIV. Because a foreclosure sale under the subject deed of trust is a private action, no State action is implicated, and the 14th Amendment Due Process clause does not apply. Accordingly, Plaintiff cannot sustain this claim.

### 4. Usury

The maximum effective rate of collectible interest in Tennessee is 10% per year, except where statutory provisions fix a different maximum rate. *See* Tenn. Code Ann. § 47-14-103. The interest rate in Plaintiff's Note is 6% per year. Docket No. 45, ¶ 20; Ex. A. By definition, therefore, the 6% interest rate is not usurious, and Plaintiff cannot sustain this claim.[5]

### 5. Breach of Contract

In order to prevail on a breach of contract claim in Tennessee, Plaintiff must demonstrate that an enforceable contract existed and was breached, and that damages resulted from that breach. *See, e.g., C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct.

---

[5] Usury is the collection of interest in excess of the maximum amounts authorized by Tennessee statute. Tenn. Cod Ann. § 47-14-102(12). A contract is usurious when there is any contingency whereby the lender may get more than the lawful rate of interest. *Cumberland Capital Corp. v. Patty*, 556 S.W.2d 516 (Tenn. 1977). Interest is "compensation for the use or detention of, or forbearance to collect, money over a periods of time, and does not include compensation for other purposes, including, but not limited to, time-price differentials, loan charges, brokerage commissions, or commitment fees." Tenn. Code Ann. § 47-14-102(8).

App. 2007).

Plaintiff argues that Defendant PRM failed to properly fund the refinance loan, and that said failure to fund constituted nonperformance resulting in breach of their contract. Docket No. 45, ¶ 131. Plaintiff asserts that she suffered monetary damages as a result. *Id.*, ¶ 133. Plaintiff, however, acknowledges that the loan was a refinance loan, and that she received the Settlement Statement which disclosed the manner in which the $208,354.00 was to be disbursed ($157,218.51 to Select Portfolio Servicing to pay off a previous loan, $39,697.03 to Franklin Loan Service to pay off a previous loan, $11,393.93 to settlement charges, and $44.53 to Plaintiff). *Id.*, ¶¶ 19, 41, 42; Exs. C, D.

Plaintiff's own Clarified Complaint demonstrates that Defendant PRM performed their contract and that no breach occurred. Additionally, public records reflect that Release of Deed documents for the two loans that were paid off with the refinance funds at issue were filed and recorded with the Davidson County Register of Deeds office. *See* Docket Nos. 58-3, 58-4. Because Plaintiff cannot establish that the contract was breached, she cannot prevail on this claim.

**6. Racketeer Influenced and Corrupt Organizations Act ("RICO") and Conspiracy/ Fraud**

As an initial matter, civil RICO claims require the establishment of two or more underlying predicate offenses. *See* 18 U.S.C. §§ 1961, 1962, et seq. Plaintiff does not specifically state what she alleges the underlying predicate offenses to be, but, to the extent that Plaintiff is asserting that any of the claims discussed above constitute the requisite underlying predicate offenses, as noted, Plaintiff cannot sustain any of those claims. They can not,

11

therefore, serve as the requisite underlying predicate offenses.

To the extent that Plaintiff intends to assert fraud via the "phantom payoff scheme," mail fraud via the use of the U.S. mail, or any other type of fraud as the underlying predicate offenses, such assertion would fail because allegations of fraud must be plead with particularity (*see* Fed. R. Civ. P. 9), which Plaintiff has not done.

Additionally, to the extent that Plaintiff asserts that Defendants conspired to commit fraud, mail or wire fraud, etc., Plaintiff has failed to plead the existence of an agreement among the necessary actors to establish a conspiracy. Plaintiff's conspiracy allegations are conclusory; they fail to state who specifically was involved, what knowledge they had of the "scheme," or what specific actions they took in furtherance of the "scheme."

Because Plaintiff cannot establish the requisite underlying predicate offenses, and because Plaintiff has failed to plead the requisite elements of a conspiracy, she cannot sustain these claims.

### 7. Miscellaneous Claims

Plaintiff also seeks the enforcement of a Consent Order. Docket No. 45, ¶¶ 180-83. The Consent Order as issue was entered into between Chase and the Federal Reserve, along with the Office of the Comptroller of the Currency. *See* Docket No. 55-1. That Consent Order specifically provides in relevant part as follows:

> Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

*Id.*, p. 27, ¶ 10.

Plaintiff does not claim to be a party to the Consent Order, nor a successor to a party; accordingly, she lacks standing to seek its enforcement.

Although Count III of Plaintiff's Clarified Complaint is headed "Defenses and Claims in Recoupment" (Docket No. 45, p. 27) and Plaintiff seeks the recoupment of the proceeds Defendant PRM received from the Note, no such cause of action is recognized in Tennessee.

Additionally, with regard to Plaintiff's contention that the Deed of Trust and the Note became invalid because they were "separated" (*Id.*, ¶¶ 61-83), her contention fails as a matter of law. It is well-settled that the transfer of a note automatically carries with it the lien created by the deed of trust or other security instrument. Moreover, unless it contains a clause to the contrary, a promissory note is a negotiable instrument under Tennessee law, which can be sold, assigned, or transferred to another party. *See* Tenn. Code Ann. §§ 47-3-104, 47-3-201, 47-3-203. When a negotiable instrument is transferred, the transferee receives the right to enforce the instrument, including the right to collect payments owed. *See* Tenn. Code Ann. §§ 47-3-203, 47-3-301, 47-3-302. Accordingly, Plaintiff must still pay her debt under the Note, and whoever holds the Note, or has the right to enforce the Note for the holder, has the authority to collect payments on the debt.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motions to Dismiss (Docket Nos. 52, 54, 58) be GRANTED, and that this action be DISMISSED.[6]

---

[6] In her First Amended Clarified Complaint, Plaintiff sought to join Mark Kilpatrick as a Defendant in this action. *See* Docket No. 56, p. 2. On April 30, 2014, the undersigned submitted a Report and Recommendation recommending that Plaintiff's First Amended Clarified Complaint be stricken because it was filed without leave of Court. Docket No. 96. If Judge Trauger adopts that Report and Recommendation, then Plaintiff's First Amended Clarified

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

---

Complaint would be stricken and Mr. Kilpatrick would be removed as a listed Defendant in this action. Should Judge Trauger also adopt the instant Report and Recommendation, all Defendants would be terminated and this action would be dismissed in its entirety.